63 P.3d 303

**Frederic LONDON, a married man, Plaintiff–Appellant,**

v.

**Barbara BRODERICK, Chief Probation Officer; Vicki Biro, Division Director; Maricopa County Adult Probation Department, a State entity, Defendants–Appellees.**

**Frederic London, a married man, Petitioner,**

v.

**The Honorable Colin F. Campbell, Judge of the Superior Court of The State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Barbara Broderick, Chief Probation Officer; Vicki Biro, Division Director; Maricopa County Adult Probation Department, a State entity, Real Parties in Interest.**

Nos. 1 CA–CV 01–0605, 1 CA–SA 02–0037.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 18, 2003.

Review Granted June 30, 2003.

Ryan, Woodrow & Rapp, P.L.C. By Donna M. McDaniel, Frank L. Migray, Martin A. Bihn, Phoenix, for Plaintiff–Appellant.

Janet Napolitano, Attorney General By Pamela Culwell, Assistant Attorney General, Michael M. Walker, Assistant Attorney General, Phoenix, for Defendants–Appellees.

---

1. Ariz.Rev.Stat. ("A.R.S.") §§ 39–121 to –125 (2001 and Supp.2002).

2. Although this issue is now moot because London was later given access to the investigative file pending his termination hearing, we consider it because it is likely to recur. *See Hamilton v.*

## OPINION

WEISBERG, Judge.

¶1 Frederic London ("London") appeals from the denial of his request for a Maricopa County Adult Probation Department ("MCAPD") investigative file pertaining to London, which was the sole issue raised by him in an administrative review action filed pursuant to Rule 123, Rules of the Supreme Court of Arizona ("Rule 123"). London also appeals from the dismissal of his subsequent special action complaint, based on Arizona's Public Records Law,[1] in which he again sought the same documents. We have consolidated these two appeals.

¶2 On appeal, London concedes that Rule 123 controls over the Public Records Law to the extent that the two conflict. We therefore consider whether the investigative file was exempted from disclosure pursuant to Rule 123, which governs public access to the records of all courts and judicial administrative offices of the State of Arizona. *See* Ariz. R. Sup.Ct. 123(a). For the reasons discussed, we reverse the decisions of the trial courts and conclude that MCAPD should have produced the investigative file to London when requested.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 London was employed as a probation officer with MCAPD. On December 20, 2000, MCAPD placed him on paid administrative leave while it investigated allegations of his misconduct. On February 8, 2001, MCAPD presented London with an official Notice of Charges of misconduct. The notice advised London that he could respond to the charges at a pre-disciplinary hearing on February 26, 2001.

¶4 On February 21, 2001, London served a public records request on MCAPD, seeking, among other items, its investigative file. Lon-

*State,* 186 Ariz. 590, 594, 925 P.2d 731, 735 (App.1996) (Although issue on appeal is moot, we nevertheless address the merits of the taxpayers' claims because the public interest will be served.).

don also asked that the pre-disciplinary hearing be rescheduled for March 19, 2001, to allow him adequate time to review the requested documents, as well as prepare responses to the charges against him. MCAPD agreed to reschedule.

¶ 5 On March 13, 2001, MCAPD advised London that he could pick up the requested documents after 1:00 p.m. the next day. When received, those documents included a March 14th letter from Division Director Vicki Biro explaining that the investigative notes and witness statements would not be provided because they were "not public record[s] until the disciplinary hearing is completed." On March 16, London sent a written objection to MCAPD regarding its refusal to provide the withheld materials.

¶ 6 On March 19, 2001, the parties attended the pre-disciplinary hearing. Barbara Broderick, MCAPD Chief Probation Officer, agreed to hear only a portion of the charges against London and to stay the balance of the pre-disciplinary hearing pending London's special action in superior court.

¶ 7 London then filed a special action in Maricopa County Superior Court pursuant to A.R.S. § 39–121.02(A) (2001), the Public Records Act. The case was assigned to Judge Roland J. Steinle, III. The Arizona Attorney General's Office, on behalf of MCAPD, wrote London's counsel asking London to voluntarily dismiss the special action because Rule 123 required that the records request be pursued as an administrative review action. Although London chose not to dismiss the special action, his counsel responded that he construed Biro's letter as "a denial for Rule 123 purposes." MCAPD then moved to dismiss London's special action, arguing that Rule 123 controlled and, therefore, the court lacked subject matter jurisdiction over the special action, or, alternatively, that even if jurisdiction were proper, the requested information was confidential under Rule 123(e)(6) and therefore shielded from disclosure.

¶ 8 Meanwhile, London filed a separate administrative review action in superior court

pursuant to Rule 123(f)(5)(A), challenging MCAPD's denial of access to the subject records. This case was assigned to Judge Colin F. Campbell. The special action before Judge Steinle was subsequently stayed while Judge Campbell undertook his review.

¶ 9 Following his review, Judge Campbell denied London's public access request to the investigative records. Judge Campbell determined that the subject documents were not public records pursuant to Rule 123(e)(1), which exempts employee records from disclosure, and Rule 123(e)(6), which exempts pre-decisional administrative records from disclosure. Accepting Judge Campbell's ruling regarding the records' confidentiality under Rule 123, Judge Steinle then granted MCAPD's motion to dismiss the special action. Judge Steinle held that the records are "confidential by law and not subject to disclosure under A.R.S. § 39–121."

¶ 10 Next, the pre-disciplinary hearing was concluded and London's employment was terminated. MCAPD then moved to unseal the investigative file in order to provide it to London prior to his termination hearing.[3]

¶ 11 Meanwhile, London appealed from Judge Steinle's dismissal order and filed a Petition for Special Action with this court seeking review of Judge Campbell's ruling. We consolidated the two cases. We have jurisdiction over this matter pursuant to A.R.S. § 12–2101(B) (1994).

## DISCUSSION

¶ 12 Asserting Rule 123, London challenges the trial court's denial of his request for MCAPD's investigative file.[4] We review rulings regarding the interpretation of statutes and court rules de novo. *Greenwald v. Ford Motor Co.*, 196 Ariz. 123, 124, ¶ 4, 993 P.2d 1087, 1088 (App.1999) (interpretation and application of court rule is question of law, which appellate court reviews de novo); *Patterson v. Maricopa County Sheriff's Office*, 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993) (interpretation of statute or rule

---

3. London's termination hearing was held after his employment was terminated.

4. While London argued in the trial court that the Public Records Law overrides Rule 123 to the extent the two conflict, on appeal, he concedes that, if there is any conflict, Rule 123 controls.

presents legal rather than factual questions, which court considers de novo).

### Rule 123(e)(1)

¶ 13 In the administrative review action, Judge Campbell concluded that the documents sought were not public records under Rule 123(e)(1), which exempts employee records from disclosure, and therefore not releasable to London. Thereafter, relying on Judge Campbell's ruling, Judge Steinle granted MCAPD's motion to dismiss the special action, holding that the records are "confidential by law and not subject to disclosure under A.R.S. § 39–121."

¶ 14 On appeal, MCAPD now concedes that the documents were not shielded from production by Rule 123(e)(1). MCAPD recognizes, and we agree, that Rule 123(e)(1)(G) allows an employee to waive the protections of Rule 123(e)(1) and authorize the release of his or her employment information to the public. London's public records request constituted such a waiver. Rule 123(e)(1), therefore, ought not have prevented London's access to the investigative file.

### Rule 123(e)(6)

¶ 15 Unlike the protections of Rule 123(e)(1), the protections of Rule 123(e)(6) cannot be waived. MCAPD continues to assert that Rule 123(e)(6), which exempts pre-decisional administrative records from disclosure, authorized its withholding of the investigative file. In response, London argues (1) that he is not a member of the "public" from whom the Rule prevents disclosure and (2) that Rule 123(e)(6) is inapplicable here because the investigative file is not a "preliminary" or "pre-decisional" document shielded by that subsection. We disagree with London's first argument, but agree with the second.

¶ 16 To begin, Rule 123 controls public access to the records of all courts and judicial administrative offices of the State of Arizona. Ariz. R. Sup.Ct. 123(a). The parties agree that MCAPD is such an administrative office. However, London challenges the application of Rule 123 to this case, arguing that it governs only "public access" to judicial records, and, as a probation officer with MCAPD, he is not a member of the "public" under the rule.

¶ 17 As MCAPD notes, London never raised this argument in the special action below. Accordingly, he could be disallowed from raising it now on appeal. *Schoenfelder v. Ariz. Bank,* 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990) (as a general rule, appellate courts will not review an issue on appeal that party did not raise and argue in trial court). However, it is within our discretion whether to apply this rule. *City of Tempe v. Fleming,* 168 Ariz. 454, 456, 815 P.2d 1, 3 (App.1991) (rule that argument not asserted at trial court cannot be considered on appeal is procedural, not jurisdictional, and may be suspended in court's discretion). In our discretion, we choose to consider this argument, which we reject on its merits.

¶ 18 Rule 123 defines the term "public" as:

> [T]hose persons who are not judges, clerks, administrators, professionals or other staff employed by or working under the supervision of the court, or employees of other public agencies who are authorized by state or federal rule or law to inspect and copy closed court records.

Ariz. R. Sup.Ct. 123(b)(11). London asserts that, given his job with MCAPD, he did not submit his records request as a member of the "public," but rather as an employee working under the supervision of the court. We disagree.

¶ 19 Rule 123's provisions should "be read and construed in context with the related provisions and in light of its place in the [Rule's] scheme." *Grant v. Bd. of Regents of Univs. & State Colls.,* 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982) (discussing rules of statutory construction); *see also In re Victoria K.,* 198 Ariz. 527, 532, ¶ 21, 11 P.3d 1066, 1071 (App.2000) (court employs tools of statutory construction to interpret court rules). Furthermore, a court should apply a pragmatic construction of Rule 123 if a technical construction would lead to absurd results. *State v. Weible,* 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984).

¶ 20 Here, the only pragmatic construction of the word "public," as used in Rule 123, is that it does not include a court employee making a records request when such a request is not based on the employee's need to examine closed records as part of his or her employment duties. Any other interpretation would significantly compromise the protections afforded by the Rule by allowing court employees unlimited access to otherwise confidential records. Therefore, we conclude that a court employee initiating a records request for reasons unrelated to employment duties is a member of the "public" for the purposes of such a request. Accordingly, London was a member of the "public" when he made his request for MCAPD's investigative file because he was not making that request in furtherance of his duties as a probation officer.

■ ¶ 21 Nonetheless, even though London was a member of the public, Rule 123(e)(6) ought not have prevented his access to the records because it makes all administrative records of the judicial department open to the public subject only to certain specific exceptions that do not apply here. Rule 123(e)(6) provides that:

**(e) Access to Administrative Records.**

All administrative records [5] are open to the public except as provided herein:

. . . .

(6) *Preliminary and Draft Reports Concerning Court Operations; Pre–Decisional Documents.* Final administrative documents and reports concerning the operation of the court system are open for public inspection and copying by the custodian on court premises. Preliminary drafts of such reports, and pre-decisional documents relating to court operations, shall be open once such draft reports and such pre-deci-

sional documents are circulated to any court policy advisory committee or the public for comment.

Ariz. R. Sup.Ct. 123(e)(6).

■ ¶ 22 By its terms, Rule 123(e)(6) restricts access only to preliminary drafts of reports and pre-decisional documents. Once such documents are circulated to "any court policy advisory committee or the public for comment," they are subject to disclosure. Ariz. R. Sup.Ct. 123(e)(6). The purpose of this provision is to "confirm[ ] the right of court employees as public officials to uninhibitedly explore *policy issues,* without fear that their internal deliberations will be exposed to the public before decisions are finalized." *See In re Rule for Public Access to the Records of the Judicial Department,* (Petition to Adopt), R–97–0019 § 5.6 (Ariz. June 20, 1997) (emphasis added) (discussing proposals of the Public Access to Court Records Committee).

¶ 23 In the instant case, the investigative file pertaining to London's disciplinary hearing does not contain pre-decisional documents relating to policy issues. Instead, the subject documents pertain to an employment disciplinary proceeding. This file will never be "circulated to a court policy advisory committee or the public for comment." Ariz. R. Sup.Ct. 123(e)(6). Accordingly, the investigative file does not receive the protections needed for debates of internal policy issues not yet finalized and ready for public dissemination. Because MCAPD failed to establish that the investigative file was exempt from disclosure under Rule 123(e)(6), MCAPD ought not have denied the release of the records to London. *See* Rule 123(c)(1) (noting presumption of open records).

**5.** An "Administrative Record" is defined as "any record pertaining to the administration of the courts, court systems or any non-adjudicatory records." Ariz. R. Sup.Ct. 123(b)(12)(A) (as contrasted with a "Case Record" defined in subsection (b)(12)(B) to include "any record pertaining to a particular case or controversy.").

The term "Record" is also broadly defined to include:

[A]ll existing documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other materials, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of any official business by the court, and preserved or appropriate for preservation by the court as evidence of the organization, functions, policies, decision, procedures, operations or other governmental activities.

Ariz. R. Sup.Ct. 123(b)(12).

## Rule 123(f)(4)

¶ 24 Finally, Rule 123(f)(4) affords the custodian of the records the right to withhold such records if their release would "substantially interfere with the constitutionally or statutorily mandated functions of the court or the office of the custodian" or "substantially interfere with the routine operations of the court." Rule 123(f)(4)(A)(ii), (A)(iii). Pursuant to Rule 123(f)(4), we must balance MCAPD's interests in keeping the records confidential with London's interests in obtaining the records in order to prepare for the pre-disciplinary hearing. We note, however, that there is a presumption in favor of disclosing the records to London. *See* Rule 123(c)(1).

¶ 25 MCAPD argues that, pursuant to Rule 123(f)(4), its interest in conducting without interference objective and confidential investigations of employee misconduct outweighs London's interest in obtaining the documents. London responds that his interest in obtaining information in order to prepare for the pre-disciplinary hearing outweighs any interest MCAPD may have in keeping the information confidential. We agree with London.

¶ 26 MCAPD fails to explain how its investigation would have been impeded by the disclosure of the information. From December 20, 2000, when MCAPD placed London on administrative leave, until February 8, 2001, when MCAPD presented London with an official Notice of Charges, MCAPD had the opportunity to conduct a thorough and confidential investigation, including identifying relevant witnesses, interviewing witnesses, reviewing relevant internal documents, and determining the type of disciplinary action to take. Once MCAPD had gathered this information, London no longer had the opportunity to "manipulate witnesses" or otherwise interfere with MCAPD's investigation. At that point, MCAPD would not have been prejudiced by disclosing its findings to London.

¶ 27 Moreover, London had a compelling interest to review the allegations against him prior to the pre-disciplinary hearing. London's employment was in jeopardy and, in order to prepare an appropriate response to the charges, he needed access to the relevant information. London's interest clearly outweighed any further interest MCAPD had in keeping the information confidential. We therefore hold that, in this matter, Rule 123(f)(4) did not shield the investigative file from disclosure.

## CONCLUSION

¶ 28 Although London was acting as a member of the "public," we conclude that MCAPD's investigative file pertaining to London was not exempted from production by Rule 123(e)(1), Rule 123(e)(6) or Rule 123(f)(4). We therefore reverse the decisions of the trial courts.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and PATRICK IRVINE, Judge.