SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| FREDERIC LONDON, a married man, | ) | Arizona Supreme Court |
| | ) | No.   CV-03-0090-PR |
| Plaintiff-Appellant, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | Nos.  1 CA-CV 01-0605 |
| BARBARA BRODERICK, Chief | ) |      1 CA-SA 02-0037 |
| Probation Officer; VICKI BIRO, | ) |      (Consolidated) |
| Division Director; MARICOPA | ) | |
| COUNTY ADULT PROBATION | ) | Maricopa County |
| DEPARTMENT, a State entity, | ) | Superior Court |
| | ) | Nos.  CV 01-005377 |
| Defendants-Appellees. | ) |      CV 01-009342 |
| _____ | ) | |
| | ) | |
| FREDERIC LONDON, a married man, | ) | |
| | ) | |
| Petitioner, | ) | **O P I N I O N** |
| | ) | |
| v. | ) | |
| | ) | |
| THE HONORABLE COLIN F. CAMPBELL, | ) | |
| JUDGE OF THE SUPERIOR COURT OF | ) | |
| THE STATE OF ARIZONA, in and for | ) | |
| the County of MARICOPA, | ) | |
| | ) | |
| Respondent Judge, | ) | |
| | ) | |
| BARBARA BRODERICK, Chief | ) | |
| Probation Officer; VICKI BIRO, | ) | |
| Division Director; MARICOPA | ) | |
| COUNTY ADULT PROBATION | ) | |
| DEPARTMENT, a State entity, | ) | |
| | ) | |
| Real Parties in Interest. | ) | |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Colin F. Campbell, Judge
The Honorable Roland J. Steinle, III, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
204 Ariz. 272, 63 P.3d 303 (App. 2003)

**VACATED**

---

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
        by    Michael M. Walker, Assistant Attorney General
Attorneys for Defendants-Appellees/Real Parties in Interest

RYAN WOODROW & RAPP, PLC                                     Phoenix
        by    Martin A. Bihn
        and   Donna M. McDaniel
        and   Frank L. Migray
Attorneys for Plaintiff-Appellant/Petitioner

---

**B E R C H**, Justice

¶1          This case analyzes whether Arizona Supreme Court Rule 123, the court's "open records" provision, permits a probation department employee who faces disciplinary charges to obtain disclosure of the employer's investigatory file pertaining to those charges before the employee's pre-disciplinary interview. We conclude that while Rule 123 creates a presumption that court records are available for public viewing, the custodian may overcome that presumption by showing that the government's interest in confidentiality outweighs the public's interest in disclosure. Because in this case the Maricopa County Adult Probation Department has shown an interest that overcomes the presumption of openness and outweighs the public interest in disclosure, we affirm the decision of the trial court that the investigatory file need not be disclosed before the pre-disciplinary interview.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2      Frederic London worked for the Maricopa County Adult Probation Department ("MCAPD") as a probation officer.  In late December of 2000, responding to allegations that London had engaged in misconduct, MCAPD placed him on administrative leave.  On February 8, 2001, MCAPD gave London a seven-page notice, setting forth in detail the charges against him.  It also advised London that he could respond to the charges in writing and at a "pre-disciplinary hearing."[1]

¶3      Before London's pre-disciplinary interview, he made a public records request seeking several items, including MCAPD's investigatory file containing evidence of the charges against him. MCAPD made some documents available to London, but advised him that the investigative file was not public and would not be released until after the pre-disciplinary interview, which took place on March 19, 2001.  At the interview, only some of the charges were discussed.  The parties agreed to postpone discussion of several

---

[1]    Although denominated a "hearing," the "pre-disciplinary hearing" allowed by the Judicial Merit System Resolution and Rules is merely an interview that provides the employee an opportunity to respond to charges and tell his or her side of the story. *See* Judicial Merit System Resolution & Rules ("J.M.S.") § 16(E) and R. 10.03(A).  After the pre-disciplinary interview, the appointing authority determines whether to take disciplinary action and, if so, what sanction to impose. *Id*. R. 10.03(B).  The employee may "appeal" the determination within ten days. *Id*. § 17(A) and R. 11. The appeal is more like a trial, at which facts are found and conclusions of law drawn. *See id.*  In this case, once discipline was imposed, MCAPD provided London the investigatory file to aid in his preparation for his appeal.

other charges pending the outcome of London's challenge to MCAPD's refusal to disclose the investigatory file.

¶4 London filed a special action in superior court based on Arizona's Public Records Act, Ariz. Rev. Stat. ("A.R.S.") § 39-121 to -125 (2001 & Supp. 2002), and a separate administrative review action pursuant to Supreme Court Rule 123, the court's open records provision, to compel production of the investigatory file. In the administrative review action, Presiding Judge Colin F. Campbell found that the file was not subject to disclosure under Rule 123. In the special action, Judge Roland J. Steinle, III, concluded that the records were "confidential by law and not subject to disclosure under A.R.S. § 39-121."

¶5 London appealed both rulings. On appeal, London conceded that Rule 123, and not the Public Records Act, controlled the inquiry. Thus the court of appeals addressed only London's Rule 123 claim, concluding that nothing in Rule 123 exempts the investigatory file from disclosure and reversing Judge Campbell's decision. *See London v. Broderick*, 204 Ariz. 272, 274, ¶ 2, 63 P.3d 303, 305 (App. 2003).

¶6 We granted MCAPD's petition for review to resolve whether Arizona Supreme Court Rule 123 permits a probation department employee who faces disciplinary charges to obtain the investigatory file pertaining to those charges before the pre-disciplinary interview. We conclude that the file may be shielded from

disclosure at least until the charges have been substantiated.

**DISCUSSION**

### A. Mootness

**¶7** Because London was eventually given his investigatory file before his hearing on the decision to terminate his employment, the issue presented in this case is moot. As a prudential matter, however, we elect to decide the case because the issue it raises is important and, as long as there are government employees, will likely recur. *See Big D Constr. v. Court of Appeals*, 163 Ariz. 560, 562-63, 789 P.2d 1061, 1063-64 (1990) (noting that this court may, as "a matter of prudential or judicial restraint," consider moot issues when "significant questions of public importance are presented and are likely to recur").

### B. Rule 123; Open Records

#### 1. <u>Public records background</u>

**¶8** Rule 123, the court's open records provision, recognizes the public's significant interest in access to information regarding the courts and honors the presumption that court records be open and available to the public. Its basic disclosure provision is as follows:

> Historically, this state has always favored open government and an informed citizenry. In the tradition, *the records in all courts and administrative offices of the Judicial Department of the State of Arizona are presumed to be open to any member of the public* for inspection or to obtain copies at

all times during regular office hours at the
office having custody of the records.

Ariz. R. Sup. Ct. 123(c)(1) (emphasis added). As the public records law does for public offices, the court's open records rule implements the public's interest in seeing that the courts perform efficiently and effectively by providing access to court records. *Compare* A.R.S. § 39-121 ("Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."), *with* Ariz. R. Sup. Ct. 123. Public access to court records helps further the democratic value of having knowledgeable and informed citizens and is thus instrumental to a state founded on principles of self-governance.

¶9 But sometimes the benefits of public disclosure must yield to the burden imposed on private individuals or the government itself by disclosure. Such circumstances have spawned common-law limitations on public disclosure to protect privacy interests, confidential information, and certain governmental interests. *See, e.g., Carlson v. Pima County*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984) (noting that "an unlimited right of inspection might lead to substantial and irreparable private or public harm," which must be weighed against "the general policy of open access" to determine whether disclosure is proper); *Mathews v. Pyle*, 75 Ariz. 76, 80-81, 251 P.2d 893, 896 (1952) (holding that if disclosure "would be detrimental to the best interests of the

state," records may be kept from the public).  These common-law limitations attempt to accommodate the tension between the public right to open government and the need to protect confidential information, personal privacy of those who interact with government offices, and overriding interests of the government.  *See Carlson*, 141 Ariz. at 490, 687 P.2d at 1245.  These common-law exceptions to disclosure circumscribe unfettered access and allow the government to withhold documents from the public if the custodian of the records articulates sufficiently weighty reasons to tip the balance away from the presumption of disclosure and toward non-disclosure.

¶10     Section (c)(1) of Rule 123 incorporates into the court's open records rule provisions analogous to the common-law exceptions to the public records law.  Section (c)(1) provides that "in view of the possible countervailing interests of confidentiality, privacy or the best interests of the state[,] public access to some court records may be restricted or expanded . . . ."  Ariz. R. Sup. Ct. 123(c)(1).  Rule 123 also exempts from presumptive disclosure several other categories of records:  certain employee records, employment or volunteer applications, judicial case assignments, security records, procurement records, pre-decisional documents, library records, attorney and judicial work product, juror records, proprietary and licensed material, and copyrighted documents and materials.  *See id.* § (e)(1)–(11).  Rule 123 also provides several exceptions, based on practical considerations, that allow the

courts to shield documents if disclosure would impose "an undue financial burden," or the request is duplicative or "harassing[,] or substantially interfere[s]" with court functions or operations. *Id.* § (f)(4)(A)(i)-(iv).  Rule 123's explicit exceptions to disclosure and the common-law exceptions included in section (c)(1) allow the courts to perform their duties efficiently, without imposing an unjustified burden on requesting individuals or the courts.[2]

2.    Application of Rule 123 to this case[3]

**¶11**    One seeking documents from the court need not state a reason for requesting them.  We presume that public documents will be disclosed.  *See id.* § (c)(1).  If a request is delayed or denied, the custodian must provide a written explanation of reasons for denying the request.  *See id.* § (f)(4)(B)(i).  If the custodian of court records articulates a valid interest in shielding a

---

[2]    Because the exceptions listed in section (c)(1) parallel their public records law counterparts, we will apply existing standards and public records caselaw in interpreting the Rule 123(c)(1) exceptions.

[3]    Both trial courts found the investigative file to be non-disclosable.  These decisions of law were based on factual findings, which we review for clear error. *Scottsdale Unified Sch. Dist. v. KPNX Broad. Co.*, 191 Ariz. 297, 302, ¶ 20, 955 P.2d 534, 539 (1998); *Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).  We may, however, draw our own conclusions of law. *Scottsdale Unified Sch. Dist.*, 191 Ariz. at 302, ¶ 20, 955 P.2d at 539; *Bd. of Regents*, 167 Ariz. at 257, 806 P.2d at 351.  Because the ultimate determination involves a mixed question of fact and law, our review of a denial of access to public records is de novo. *Scottsdale Unified Sch. Dist.,* 191 Ariz. at 302, ¶ 20, 955 P.2d at 539; *Cox Ariz. Publ'ns, Inc. v.*

document, however, the presumption of disclosure evaporates and the court's interest in non-disclosure is balanced against the public interest in obtaining the records. *Scottsdale Unified Sch. Dist. v. KPNX Broad. Co.*, 191 Ariz. 297, 300, ¶ 9, 955 P.2d 534, 537 (1998).

¶12 In response to London's request for the investigatory file in this case, MCAPD asserted that the file should remain confidential to protect the Department's preliminary information-gathering ability and to allow it to fully explore "ideas prior to making a decision affecting internal processes or deciding to take considered options public." In an "In Camera Memorandum," MCAPD claimed that disclosing the file before the initial interview would chill potential witnesses from coming forward, frustrate the ongoing investigation by permitting London to tailor his responses to the known evidence, and place the Department at a disadvantage in presenting its case and in assessing London's credibility at the pre-disciplinary interview. MCAPD also professed an interest in protecting its preliminary information-gathering procedures, relying, in part, on the fact that some of the complaining witnesses were London's probationers, persons over whom London wielded the power to recommend revocation of probation. In addition, MCAPD asserted a systemic interest in preventing disclosure of investigations that have not been completed, in part

---

*Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993).

to protect the reputation of Department employees if allegations turn out to be frivolous or never result in disciplinary charges. Finally, MCAPD expressed concern regarding potential threats to or intimidation of complaining witnesses, probationers, or professional colleagues.

¶13        In response, London failed to articulate any interest the *public* might have in obtaining the investigatory file before the pre-disciplinary interview.  Instead, he asserted that he needed to prepare his case, a *personal* interest, and that the investigatory file is an employee record, in which he may waive his privacy interests.  *See* Rule 123(e)(1)(G).

¶14        London's waiver argument might weigh more heavily in the balance if his interests were the only privacy and confidentiality interests at stake.  MCAPD, however, has alleged that interests of probationers who have complained about London's behavior - persons over whom London holds tremendous power - also deserve protection from disclosure.  Some informants may reveal matters to investigators that they wish to have remain confidential, at least until charges are substantiated.  These legitimate interests weigh in favor of nondisclosure at the investigative stage.  Thus London's waiver of his privacy rights alone under Rule 123(e)(1)(G) does not compel disclosure of the investigatory file.

¶15        Moreover, although court employees may authorize release of information regarding their employment, Rule 123(e)(6)

contemplates release to the public at large, not to the employee him- or herself in the context of civil litigation to help prepare a personal case. The United States Supreme Court faced a similar request for investigatory information in a case decided under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976), the federal open records law. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S. Ct. 2311 (1978). In *Robbins Tire,* a company charged with an unfair labor practice sought disclosure of statements of witnesses the NLRB intended to call at a hearing. *Id.* at 216, 98 S. Ct. at 2314. The Court was asked to decide whether such disclosure would "interfere with enforcement proceedings," as that phrase is used in FOIA. *Id*. In weighing the NLRB's interest in maintaining the confidentiality of the file, the Court considered Congress's intent in drafting the FOIA exemption to "prevent 'harm [to] the Government's case in court.'" *Id*. at 224, 98 S. Ct. at 2318 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. (1965)). The Court concluded that the exception did not require disclosure of "statements of agency witnesses" before they testified at agency proceedings, *id.* at 225, 98 S. Ct. at 2318, noting that such disclosure "while a case is pending" is "precisely the kind of interference with enforcement proceedings" the FOIA exemption was designed to avoid. *Id.* at 236, 239, 98 St. Ct. at 2324-25.

¶16     This case of course differs from *Robbins Tire* in that,

unlike FOIA, Rule 123 does not contain a specific "interference with enforcement proceedings" exception. Nonetheless, we find persuasive the Court's reasoning that the public records law was not intended to serve as a private discovery tool. *Id.* at 242, 98 S. Ct. at 2327; *cf. Salt River Pima-Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 540-41, 815 P.2d 900, 909-10 (1991) (stating Arizona courts will look to FOIA for guidance in interpreting Arizona's public records act). We conclude that the privacy, confidentiality, and governmental interests articulated by MCAPD are deserving of protection and are encompassed within section (c)(1) of Rule 123, which, like its public records counterparts, shields such interests from disclosure.

¶17    Rule 123 was not designed as a supplemental discovery tool authorizing release of information to the employee for use in litigation. It was conceived as a mechanism for making court records available to the public. In this case, London acknowledged that he sought the investigatory file solely as discovery in the pending disciplinary proceedings. Indeed, at oral argument he conceded that he could think of no interest the public might have in disclosure of the preliminary investigation of a low-level probation department employee at the initial stage of the investigation. Given this concession, the scales weigh heavily in favor of MCAPD, which articulated several legitimate reasons for protecting the file from public scrutiny before charges were

brought.  We therefore conclude, much as the Supreme Court did in *Robbins Tire*, that no public records purpose would be frustrated by "deferring disclosure until after" the Department has brought its charges.  437 U.S. at 242, 98 S. Ct. at 2327.

¶18      The court of appeals in this case found, and the parties agree, that London made his request for the investigatory file as a member of the public, and not in his capacity as a court employee. *London,* 204 Ariz. at 276, ¶ 18, 63 P.3d at 307.  In its ultimate disposition, however, that court relied upon London's personal interests, citing his "compelling interest to review the allegations against him prior to the pre-disciplinary hearing." *Id.* at 278, ¶ 27, 63 P.3d at 309.  Because it found that "London's employment was in jeopardy," the court concluded that London's personal interests outweighed MCAPD's interest in confidentiality. *Id*.  In so reasoning, the court mistakenly weighed London's personal interests as an individual litigant, not the public's interest in disclosure of the preliminary investigative file. London conceded there was no such interest to weigh in the balance against the substantial interests articulated by MCAPD.

¶19      Indeed, even in this court London failed to articulate any interest the public might have in the disclosure of the investigatory file concerning mere allegations of misconduct against a probation officer before the officer himself received the file.  In his Request for Review, London mentioned the public's

interest in assuring that investigations are not flawed, but this interest is satisfied by the disclosure after the discipline is imposed.

¶20 Given the interests articulated by MCAPD and London, the weighing process is simple. Although London did not need to articulate a reason for disclosure, MCAPD's articulation of valid interests dissipated the presumption of disclosure. Thus, to overcome MCAPD's interest, London had to state a public interest in the disclosure. Because he did not state any public interest, there is weight only on MCAPD's side of the scale. Consequently, MCAPD's interest outweighs the public interest. Judge Campbell's denial of London's request was proper.

¶21 Although we have disposed of this case on the basis of Rule 123(c)(1), we briefly address two other exceptions raised in this case. MCAPD relied on Rule 123(e)(6) to preclude disclosure of the investigatory file. This exception to disclosure applies only to preliminary court documents preceding studies, opinions, rules, or other court publications that eventually will be released to the public. As the court of appeals correctly noted, "[t]he purpose of this provision is to 'confirm[] the right of court employees as public officials to uninhibitedly explore policy issues, without fear that their internal deliberations will be exposed to the public before deliberations are finalized.'" *London*, 204 Ariz. at 277, ¶ 22, 63 P.3d at 308 (citing *In re Rule*

*for Public Access to the Records of the Judicial Department*, (Petition to Adopt), R-97-0019 § 5.6 (Ariz. June 20, 1997) (discussing proposals of the Public Access to Court Records Committee)).  Disciplinary investigations are very different government actions from policy-making decisions.  Rule 123(e)(6) was meant to apply only to the latter.  Rule 123(e)(6) therefore neither exempts from disclosure nor allows disclosure of the investigatory file at issue here.

¶22    MCAPD also asserted that the file was not subject to disclosure under Rule 123(f)(4)(A)(ii) and (iii) because the request would "substantially interfere" with "constitutionally or statutorily mandated functions of the court" or the "routine operations of the court."  Those exceptions generally address the burdens imposed on staff in fulfilling requests, as opposed to burdens imposed by the nature of the subject matter of the documents.  *See id.*  In this case, MCAPD denied the request because of the content of the requested documents, not because producing the file would be unduly burdensome.  Thus Rule 123(f)(4)(A) is also inapplicable to London's request.

## C.    Attorneys' Fees

¶23    London has requested that we award him attorneys' fees incurred in this case.  Because London did not prevail in this action, we do not address his request.

- 15 -

**CONCLUSION**

¶24     We conclude that MCAPD's preliminary investigatory file pertaining to London was exempt from production by Rule 123(c)(1). We therefore affirm Judge Campbell's decision and vacate the decision of the court of appeals.


_____
Rebecca White Berch, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice