NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ASHLEY LOVE, *Petitioner/Appellant*,

*v.*

LEE LOVE, *Respondent/Appellee*.

No. 1 CA-CV 19-0470 FC

FILED 6-11-2020

Appeal from the Superior Court in Maricopa County
No. FC2017-003679
The Honorable Katherine M. Cooper, Judge

**VACATED IN PART AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Sullivan Law Office, Mesa
By Diane Sullivan
*Counsel for Petitioner/Appellant*

Gillespie, Shields, Goldfarb & Taylor, Mesa
By Mark A. Shields
*Counsel for Respondent/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

**M c M U R D I E**, Judge:

**¶1** Ashley Love ("Mother") appeals the legal decision-making, parenting-time, and child-support orders made by the superior court in the decree dissolving her marriage to Lee Love ("Father"). Mother also appeals two attorney's fee awards issued during the dissolution proceedings. For the following reasons, we affirm the court's legal decision-making and parenting-time orders but vacate its child-support and attorney's fees orders and remand for further proceedings.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2** Mother and Father married in 2014 and had a child, Austin, in November 2015. In September 2017, Wife petitioned for the dissolution of the parties' marriage. After a hearing in November 2017, the superior court issued temporary orders awarding Mother sole legal decision-making authority, designating her the primary residential parent, and establishing a parenting-time schedule for Father. The proceedings were thereafter severely delayed by extensive litigation between the parties, a change of judge, and several continuances.

**¶3** A full evidentiary hearing on the petition for dissolution was eventually scheduled for December 2018, and the parties filed separate pretrial statements. In her pretrial statement, Mother requested that she be awarded sole legal decision-making authority over Austin, remain the primary residential parent, and Father be given weekend parenting time during the daytime only. In his pretrial statement, Father requested he be

---

[1] We view the facts in the light most favorable to sustaining the superior court's findings and orders. *Alvarado v. Thomson*, 240 Ariz. 12, 13, ¶ 1, n.1 (App. 2016).

awarded sole legal decision-making authority and that the parents share equal parenting time.

¶4            At the evidentiary hearing, a court-appointed advisor, Mother, and Father testified. The advisor testified that both Mother and Father had a history of substance abuse.[2] She also testified that both parents had a history of issues involving their mental health, but she was more concerned with Mother than Father. The advisor found that, unlike Father, Mother "completely minimized her mental health," and that medical records provided to her by Father painted a very different picture of Mother's history than she had described to the advisor. The advisor testified that she did not believe Mother was adequately treating her mental-health and substance-abuse issues and recommended Mother engage in specialized therapy. The advisor also expressed concern that Mother was engaging in conduct designed to prevent Father from having contact with Austin.

¶5            For her part, Mother testified that Father had engaged in harassing, controlling, and abusive conduct during the marriage and the dissolution proceedings. Mother also outlined several incidents involving Father's care of Austin that, in her view, showed that awarding Father legal decision-making authority and equal parenting time was not in Austin's best interest. In response to the advisor's testimony concerning her mental-health and substance-abuse history, Mother described two instances where she was hospitalized in 2016 and 2017. She claimed that: (1) the first incident was caused by her becoming scared that she "was going to have a really bad reaction" to mixing alcohol and her prescribed medications; and (2) the second incident was caused by an "allergic reaction" to medication given to her after a car accident. Mother denied that either event was a suicide attempt or an intentional overdose.

¶6            In January 2019, the court issued a decree that addressed legal decision-making and parenting time. After analyzing the relevant statutory factors, Ariz. Rev. Stat. ("A.R.S.") § 25-403(A)(1)–(11), the court awarded sole legal decision-making authority over Austin to Father. In doing so, the court found, among other things, that medical records documenting Mother's 2016 and 2017 hospitalizations showed that both incidents

---

[2]            During the dissolution proceedings, both Mother and Father participated in regular substance-abuse testing, and by the time of the December 2018 hearing, neither parent had tested positive for inappropriate substances for some time.

involved intentional overdoses and that medical professionals designated the 2016 hospitalization as a suicide attempt by overdose. The court found that "[t]hese events are related to a lack of medical management with a psychiatrist, counselor, and substance abuse program, combined with [Mother's] response to life stressors." The court concluded: "It is inevitable that Mother will continue to experience the kind of triggers that cause her to decompensate, particularly without appropriate medical care and substance abuse treatment." Based on these findings, the court concluded that allowing Mother to have unsupervised parenting time at the time of the decree could seriously endanger "the child's physical, mental, or moral health or would significantly impair the child's emotional development." *See* A.R.S. § 25-403.01(D). The court established a graduated parenting plan whereby Mother would receive more frequent and less restricted parenting time with Austin after demonstrating she was receiving treatment and participating in substance-abuse testing. Finally, the court awarded Father attorney's fees under A.R.S. § 25-324 and, after calculating Mother's child-support obligation, ordered that Mother pay Father $492 per month in child support.

¶7        Mother filed a combined motion under rules 85, 83, and 35.1 of the Arizona Rules of Family Law Procedure ("Rule"), requesting the court grant her relief from, alter or amend, or reconsider the provisions of the decree governing legal decision-making and parenting time, attorney's fees, and child support. After ordering Father to file a response to the combined motion, the court summarily denied it and again awarded Father attorney's fees. Mother appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1), (2), and Rule 78(c).

**DISCUSSION**

**A.      Mother's Arguments Concerning Legal Decision-Making and Parenting Time Are Moot.**

¶8        Mother first argues the superior court erred by awarding Father sole legal decision-making authority over Austin, making Father the primary residential parent, and restricting her parenting time. Mother asserts many of the court's factual findings were erroneous and do not support the conclusions the court reached. Considering these alleged errors, Mother asks us to vacate the legal decision-making and parenting-time provisions of the decree and remand for a reexamination of both. However, we conclude events during the pendency of this appeal have now rendered these arguments moot.

**¶9**          "A decision becomes moot for purposes of appeal where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties." *Bank of N.Y. Mellon v. De Meo*, 227 Ariz. 192, 193–94, ¶ 8 (App. 2011) (quoting *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4 (App. 1988)). "Although . . . Arizona courts are not constitutionally constrained to consider only 'cases' or 'controversies,' we typically decline to consider moot or abstract questions as a matter of judicial restraint." *Kondaur Capital Corp. v. Pinal County*, 235 Ariz. 189, 192–93, ¶ 8 (App. 2014); *Brionna J. v. DCS*, 247 Ariz. 346, 351, ¶ 15 (App. 2019) (case is moot when it seeks to determine a question that does not arise upon existing facts). "It is not an appellate court's function to declare principles of law which cannot have any practical effect in settling the rights of litigants." *Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548 (App. 1985).

**¶10**          Here, granting the relief Mother seeks—reconsideration of the superior court's legal decision-making and parenting-time order—would no longer serve any purpose given two events that occurred while this appeal was pending. First, according to an agreement approved by the court on January 13, 2020, Mother is now entitled to unsupervised, equal parenting time with Father. Second, on April 3, 2020, Mother filed a petition to modify legal decision-making in the superior court requesting the parties share joint legal decision-making authority. Father filed a response shortly thereafter *agreeing* that Mother and Father should now exercise joint decision-making authority over Austin.[3] These events demonstrate that the current circumstances surrounding legal decision-making and parenting time have significantly changed from the time of the court's original orders nearly a year and a half ago. Given these developments, rewinding the clock by assessing the superior court's original legal decision-making and parenting-time orders would have no practical effect in settling the rights of Mother and Father as they exist today. *See Brionna J.*, 247 Ariz. at 351, ¶ 15. Simply put, although the parties still are not in total agreement on every aspect of Austin's care, Mother and Father have substantially accomplished, through conciliation and compromise, what any action by this court could achieve. Accordingly, we conclude Mother's arguments

---

[3]          We take judicial notice of Father's response to Mother's petition to modify legal decision-making. *In re Pima County Mental Health No. MH-959-10-85*, 149 Ariz. 7, 9 (App. 1986) (court make take judicial notice of the contents of the superior court's file).

concerning the superior court's original legal decision-making and parenting-time orders are now moot and do not address them further.

## B.    The Superior Court Erred by Miscalculating Mother's Child-Support Obligation.

¶11         Next, Mother argues the court erred by failing to appropriately credit her for the cost of medical insurance for Austin when calculating her child-support obligation. We review child-support awards for an abuse of discretion. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019) (quoting *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12 (App. 2004)).

¶12         Under the child-support guidelines, when determining the total child-support obligation, the court "[s]hall add to the Basic Child Support Obligation the cost of the children's medical dental or vision insurance coverage." A.R.S. § 25-320(9)(A) (child-support guidelines). "If a parent pays a cost under [§ (9)(A), the court must] deduct the cost from that parent's Proportionate Share of Income to arrive at the Preliminary Child Support Amount." A.R.S. § 25-320(13) (child-support guidelines).

¶13         Here, the court ordered that Mother was responsible for providing medical insurance for Austin, including continuing "to pay premiums for any medical, dental and vision policies covering the child that are currently in existence." But in calculating Mother's child-support obligation, the court appears to have used the sum of *Father's* asserted total monthly cost for medical insurance in his affidavit of financial information, $84.46, instead of the total monthly cost of medical insurance stated by Mother in her affidavit of financial information. This was error. If the court intended for Mother to provide Austin medical insurance by paying the premiums owed under Father's medical insurance plan, it should have attributed the monthly payments to Father and added the cost to Mother's monthly child-support obligation. If, on the other hand, the court intended for Mother to pay the premiums associated with her medical-insurance

plan, it should have used the cost of those premiums to determine the child-support obligation.[4]

¶14	Because we lack the means to determine what the court intended and because this aspect of the court's child-support order is erroneous as constructed, we vacate the child-support order and remand for the court to recalculate Mother's child-support obligation. In doing so, we recognize Mother's child-support obligation has been reduced to $0 effective January 1, 2020, under a court-approved stipulation. But contrary to Husband's assertions on appeal, this does not render the court's miscalculation of Mother's child-support obligation from February 2019 to January 2020 harmless or moot. Mother is entitled to reimbursement for any amount she overpaid during the period the child-support order was active. *See* A.R.S. § 25-527(A).

## C.	We Vacate Father's Attorney's Fees awards.

¶15	Finally, Mother argues the court erred by awarding Father attorney's fees under A.R.S. § 25-324. Section 25-324(A) provides that the court "from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding." We review the award of attorney's fees under the statute for an abuse of discretion. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286, ¶ 29 (App. 2019). "In doing so, we defer to the court's factual findings so long as there is competent evidence to support them." *Quijada v. Quijada*, 246 Ariz. 217, 222, ¶ 13 (App. 2019).

¶16	Here, the superior court concluded an award of attorney's fees under A.R.S. § 25-324(A) was warranted because it found Mother "acted unreasonably in the litigation." Specifically, the court found:

> Mother attempted to mislead the Parenting Conference provider, the [advisor], and the Court regarding her history of mental health instability and abuse of alcohol. Mother failed to comply with the parties' February 2018 Agreement

---

[4]	It is not clear what Mother's total monthly cost for medical insurance for Austin was at the time of the decree. On remand, Mother will only be entitled to claim insurance expenses to the extent she can clarify and explain the actual amount she pays each month for Austin's medical insurance.

regarding parenting time. She withheld Austin from Father even on Father's Day and his other designated holidays, in addition to his agreed-upon regular parenting time. Mother's conduct caused Father to incur unnecessary fees and costs with counsel attempting to resolve this issue and then filing a motion for the Court to restore Father's access to the child.

The record supports the court's first finding. During interviews with a parenting-conference provider and the advisor, and while testifying at the December 2018 hearing, Mother admitted she was temporarily hospitalized in 2016 for an incident involving her medications. She minimized the event in each instance by asserting it was either not an overdose at all or an accidental overdose caused by her attempting to use her medication to get more rest. Mother also vacillated between claiming the incident did not involve alcohol and conceding that she was drinking at the time. However, medical records admitted into evidence show that Mother told her treating physicians that she intentionally overdosed on her medications after drinking, acknowledged that she was attempting to hurt herself, and left a note. Mother's treating physicians characterized the incident as a suicide attempt by overdose. The court was thus within its discretion to conclude that Mother's lack of candor concerning this incident was an attempt to mislead the court and its advisor and that this conduct was unreasonable.

**¶17**        Two of the court's other findings, on the other hand—that Mother failed to abide by the parties' agreement regarding parenting time and withheld Austin from Father on Father's Day and other designated holidays—are not supported by the record. Although the parties did enter into a Rule 69 agreement with an altered parenting-time arrangement in February 2018, the judicial officer presiding over the case at that time reinstated the temporary parenting-time arrangement established by the court in November 2017. Under Rule 69, a written and signed parenting-time agreement is binding only on the parties, not the court, and the court had the authority to reinstate its temporary parenting-time orders. Ariz. R. Fam. Law. P. 69(a)(1), (b). It was improper for a different judicial officer to later fault Mother for failing to comply with an agreement that was no longer in force.

**¶18**        Regarding the court's finding that Mother withheld Austin from Father on Father's Day and other holidays, both parties stated that Austin did spend Father's Day with Father. And the November 2017 temporary orders only provided a holiday schedule for Thanksgiving and Christmas 2017. The finding by the court was erroneous.

**¶19**        Because we are remanding the case for redetermination of child support, the court can reconsider its awards of fees without the inappropriate findings.

## CONCLUSION

**¶20**        We affirm the decree except for the order of child support and attorney's fees. Both parties request an award of attorney's fees and costs. In our discretion, we decline to award attorney's fees; however, as the prevailing party, Mother is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. We remand for further proceedings consistent with this decision.

